380 N.E.2d 583 (1978)
Lorene HARTMAN, Administratrix of the Estate of Russell P. Hartman, Jr., Appellant-Plaintiff,
v.
MEMORIAL HOSPITAL OF SOUTH BEND, Appellee-Defendant.
No. 3-277A45.
Court of Appeals of Indiana, Third District.
September 21, 1978.
*584 Thomas H. Singer, Lysohir & Singer, South Bend, for appellant-plaintiff.
Margaret C. Attridge and James V. Donadio, Ice, Miller, Donadio & Ryan, Indianapolis, Herbert H. Bent, Rockhill, Kennedy, Pinnick, Sand, Bent & Pequignot, Warsaw, for appellee-defendant.
STATON, Judge.
Lorene Hartman, as administratrix of the estate of her deceased husband, Russell P. Hartman, Jr., sued Memorial Hospital of South Bend for negligence in connection with Russell's suicide, inflicted while he was a patient on the hospital's psychiatric ward. At trial in the Kosciusko Circuit Court, a jury found against Lorene Hartman and for the hospital. Lorene Hartman appeals, alleging the trial court erred in giving over her objection the defendant Hospital's Instructions 1 and 8.
We conclude that the trial court did not err in giving Memorial Hospital's Instruction 1. We conclude further that it did err in giving Instruction 8; however, that error was not so prejudicial as to warrant reversal. We therefore affirm.

I.

The Factual Context
Dr. Edward A. Davis admitted Russell P. Hartman to the psychiatric ward of Memorial Hospital on September 29, 1972, for acute depression. Dr. Davis, Russell's private physician, had admitted him to the ward on an earlier occasion, in February of 1969.
During the afternoon and evening hours of September 29 and in the early morning hours of September 30, Russell experienced alternating periods of calm and distress. Drugs were administered. At 7:00 a.m. on September 30, the personnel changed on the psychiatric ward. Upon reporting for work, orderly Fred Yates was told by a retiring aide that Russell had experienced distress during the night. Yates went to Russell's room, and the two men talked. Nurse Rousseve went to Russell's room about ten or twelve minutes past 7:00 a.m.; she found Russell lying quietly in bed, apparently subdued as a result of medication. Nurse Rousseve talked to Russell, reassured him, and left.
At approximately 7:15 a.m. Russell was found lying on his side, with a paper cup in his hand. He appeared cyanotic and had no pulse or blood pressure. Attempts to revive Russell failed. The cause of death was given as asphyxiation; Russell had committed suicide by causing a small plastic cup to be lodged in his throat.
Lorene Hartman sued the hospital, alleging in her amended complaint that Russell Hartman died as a result of the joint and several acts of negligence of the defendants,[1] who failed to use due care in the diagnosis, care, supervision and treatment of Russell P. Hartman, "who the defendants knew or in the exercise of reasonable care should have known might commit suicide." Lorene Hartman prayed for judgment in an amount that "will fairly and adequately compensate the estate for its loss and also compensate his wife and children for their loss together with the costs of this action and all other proper relief in the premises."
Following trial a jury returned a verdict in favor of Memorial Hospital and awarded it costs.

*585 II.

Instruction 1
Memorial Hospital's tendered Instruction 1, given by the trial court over Lorene Hartman's objection, read:
"In order for the plaintiff to recover in this case, she must prove by a preponderance of the evidence not only that the defendant Memorial Hospital of South Bend breached its legal duty as I have defined it for you, but also that such breach proximately caused the plaintiff's decedent's death and the damages, if any, complained of. Plaintiff moreover may not recover because of decedent's death and damages, if any, which you find would have occurred no matter what nursing and hospital care was rendered to the plaintiff's decedent by the defendant Memorial Hospital of South Bend."
Lorene Hartman objected to the instruction in this fashion:
"The plaintiff objects to the defendant's requested Instruction Number 1 . . on the grounds that the last sentence thereof, beginning with the words, `Plaintiff, moreover, may not recover . .' allows the Jury to decide that the deceased would have committed suicide regardless of the care of the hospital and permits the Jury to thus deliberate on an issue that is not in the lawsuit and on facts that are not in the lawsuit. The Jury is not to be instructed on issues or facts not in the lawsuit."
In Pennsylvania Ice & Coal Co. v. Elischer (1939), 106 Ind. App. 613, 21 N.E.2d 436, the Appellate Court defined the standard of review when an instruction is attacked on appeal as being outside of the issues and evidence:
"[I]nstructions should be relevant to the issues in each particular case and applicable to the facts and circumstances therein. If there were any facts or circumstances in the case, although quite meager, to which the instructions might, upon any view, be pertinent, provided they were correct in the statement of the law, it would not be error for the court to give them, although they were so given to the jury over the objection of the complaining party. Furthermore, it is not every instance where the trial court has given an instruction not applicable to the evidence which will constitute reversible error, but it must be made further to appear that the giving of such instruction tended to injure or harm the complaining party in his substantial rights. [Citation omitted.] In determining whether or not an instruction is applicable to the evidence, it is necessary to consider the evidence in its entirety, together with all reasonable inferences which might be drawn therefrom... ." 106 Ind. App. at 621, 21 N.E.2d at 439.
See also Schlarb v. Henderson (1936), 211 Ind. 1, 4 N.E.2d 205.
It is error for a trial court to give an instruction which is not pertinent to the issues and applicable to the evidence. Baker v. Mason (1968), 253 Ind. 348, 242 N.E.2d 513. And, where it is claimed that an instruction was given upon which there is no evidence, the point of inquiry in determining whether the erroneous instruction was prejudicial is whether the jury was misled. Rondinelli v. Bowden (1973), 155 Ind. App. 582, 293 N.E.2d 812.
Lorene Hartman's theory of recovery was negligence. She was compelled to prove by a preponderance of the evidence that Memorial Hospital breached a legal duty owed Russell and that the breach proximately caused his death. The concept of "proximate cause" was thus within the issues raised in the case, for an essential element of recovery in a negligence action is that the injury be the proximate result of a defendant's negligence. St. Joseph Bank & Trust Co. of South Bend. v. Sun Ins. Co. of New York (N.D.Ind. 1974), 380 F. Supp. 890. Celanese Coating Co. v. Blakemore (1975), Ind. App., 324 N.E.2d 268.
The substance of Memorial Hospital's Instruction 1 concerns this "probable cause" concept; it instructs that any breach of Memorial Hospital's legal duty must have proximately caused Russell Hartman's death and the other damages claimed. The *586 portion of the Instruction to which Lorene Hartman objects is consistent with this concept. It instructs that Lorene Hartman may not recover if the jury finds that Russell's death and other damages would have occurred regardless of Memorial Hospital's care. A causal connection between Russell's death and other damages and the Hospital's care must exist. Evidence submitted at trial which would have enabled the jury to so find and which supported the giving of Instruction 1 is as follows:
(1) Suzanne Salsbury, an expert witness for Lorene Hartman and psychiatric nurse at Beatty Memorial Hospital, testified that in spite of the excellent care afforded patients at Beatty Memorial Hospital, suicides do in fact occur.
(2) Nurse Rousseve, a witness for Memorial Hospital, testified on Lorene Hartman's cross examination that even if someone had watched Russell Hartman constantly he "would have probably done the same thing."[2]
(3) Dr. David Crane, a psychiatrist and witness for Memorial Hospital, testified that even assuming someone had sat with Russell Hartman continuously through the early morning hours of September 30, he still could not say whether Russell would be alive today.
(4) Dr. David Wehlage, a psychiatrist and witness for Memorial Hospital, testified that "[i]t is a well known fact that anyone determined to kill themselves will kill themselves in spite of whatever preventive or surveillant procedures you have... ."
This evidence was supportive of Instruction 1. See Pennsylvania Coal & Ice Co. v. Elischer, supra. Although the testimony of Suzanne Salsbury was not directed specifically at the nature of the psychiatric care afforded at Memorial Hospital of South Bend, the reasonable inference obtains that suicides may occur no matter what nursing care or hospital care is provided. Similarly, a reasonable inference directed at Russell's behavior obtains from Dr. Wehlage's general statement regarding suicidal propensities. As to the credibility and weight to be afforded the above witnesses and their testimony, we point out that the appellate court is not the proper forum to weigh testimony or determine the credibility of witnesses. Wm. J. and M.S. Vesey, Inc. v. Hillman (1972), 151 Ind. App. 388, 280 N.E.2d 88. The trial court committed no error in giving Memorial Hospital's Instruction 1.

III.

Instruction 8
Memorial Hospital's tendered Instruction 8 read:
"The admission of Russell Hartman to Memorial Hospital of South Bend on September 29, 1972 was pursuant to the professional medical relationship between Russell Hartman and Dr. Edward A. Davis and in such capacity the said Dr. Davis was not acting as the agent, servant, or employee of the defendant Memorial Hospital of South Bend and said hospital could not and did not control the actions of Dr. Davis in so admitting Russell Hartman or his orders with respect to the care and medication to be given to the said Russell Hartman.
"The defendant Memorial Hospital of South Bend therefore cannot be held liable for anything which Dr. Edward A. Davis did or failed to do with respect to the admitting orders and medical care of the said Russell Hartman."
Lorene Hartman objected to Instruction 8:
"The plaintiff objects to the defendant's Instruction Number 8 ... on the grounds that it again instructs on an issue not within the lawsuit or the pleadings or any of the evidence. There is no charge made by the plaintiff and there is no contention made by the defendant that Dr. Davis did anything that was in any way responsible for the death of Russell *587 Hartman. Again, the Court by giving the instruction is instructing on a matter that is not in issue and has not been placed in issue by either the plaintiff or the defendant. It thus permits the Jury to find against the plaintiff on a matter that is not in issue and hence, is error."
We conclude that the trial court erred in giving the jury Memorial Hospital's Instruction 8. There was no issue presented in the case and no evidence received which supported the giving of the Instruction. Baker v. Mason, supra; Pennsylvania Coal & Ice Co. v. Elischer, supra.
Dr. Edward A. Davis was sued by Lorene Hartman for negligence in connection with Russell's suicide. Lorene Hartman dismissed the complaint against Dr. Davis before trial began, without any consideration to her. At trial, Dr. Davis testified as a witness for Lorene Hartman. His testimony centered on Russell Hartman's mental health on September 29, 1972, the hospitalization of Russell, drugs administered him, and Russell's cause of death. None of the testimony at trial concerned any alleged negligence on Dr. Davis's part, nor did the reasonable inference arise that he was negligent. Accordingly, it was error to instruct the jury that Memorial Hospital could not be held liable for anything which Dr. Davis did or failed to do with respect to the care of Russell Hartman.
But we conclude further that the error was not so prejudicial as to require a reversal, since the verdict here does not appear to have been predicated upon this instruction. Baker v. Mason, supra. Nor does it appear that the jury was misled by the instruction. Rondinelli v. Bowden, supra. We believe the jury was adequately instructed on the bounds of Memorial Hospital's liability by the instructions as a whole and specifically by the Court's Instructions 8 and 9 and Lorene Hartman's Instruction 3. Furthermore, the only evidence even remotely bordering on the quality of Dr. Davis's care was the testimony of Dr. Crane, who stated in reviewing Dr. Davis's records that he would not have done anything differently in Russell Hartman's case. Hence, any impact the instruction had on the jury in arriving at their verdict is purely speculative. The trial court did not commit reversible error.
Affirmed.
GARRARD, P.J., and SHIELDS, J. (by designation), concur in result.
NOTES
[1] Lorene Hartman originally sued both Memorial Hospital of South Bend and Doctor Davis. She dismissed the complaint as to Dr. Davis before the trial began. See III. infra.
[2] Lorene Hartman's principal allegation was that Memorial Hospital should have maintained continuous, "one-on-one" observation of Russell because the Hospital should have realized he was suicidal.